# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPECIAL RISK INSURANCE** | : | **CIVIL ACTION** |
| **SERVICES, INC.** | : | |
| *Plaintiff* | : | |
| | : | **NO. 19-3002** |
| **v.** | : | |
| | : | |
| **GLAXOSMITHKLINE, LLC** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                         APRIL 12, 2022

## MEMORANDUM OPINION

### INTRODUCTION

This matter commenced in state court and was removed to this Court on the basis of diversity jurisdiction. In its complaint, Plaintiff Special Risk Insurance Services, Inc. ("Plaintiff"), asserts claims against Defendant GlaxoSmithKline, LLC, t/a GlaxoSmithKline ("Defendant"), for breach of contract, unjust enrichment, promissory estoppel, and tortious interference with contractual relations. [ECF 8-1].

Before this Court are Defendant's motion for summary judgment on all claims, [ECF 34], and Plaintiff's response in opposition, [ECF 36], as well as Plaintiff's motion for partial summary judgement *only* on the breach of contract claim, [ECF 35], and Defendant's response in opposition, [ECF 37]. The issues raised in the motions have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendant's motion for summary judgment is granted, and Plaintiff's motion for partial summary judgment is denied.

### BACKGROUND

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  The

facts set forth herein are primarily drawn from the parties' statement of undisputed material facts,

[ECF 34-4, and 35-4].  To the extent any fact is disputed, this Court has construed it in favor of

Plaintiff.  *See Transp. Ins. Co. v. Heathland Hosp. Grp., LLC*, 2017 WL 5593363, at *1 n.3 (E.D.

Pa. Nov. 20, 2017), *aff'd*, 783 F. App'x 186 (3d Cir. 2019) (construing facts in favor of non-

prevailing party where parties filed cross-motions for summary judgment).  The facts relevant to

the cross-motions are summarized as follows:

> Defendant is a pharmaceutical company incorporated in the State of Delaware.  Plaintiff is an insurance broker incorporated in the Commonwealth of Pennsylvania.  Plaintiff acted as Defendant's group insurance broker of record from 1991 until July 1, 2015, primarily to negotiate employee group benefit insurance policies on behalf of Defendant.

> Plaintiff negotiated four employee insurance policies on behalf of Defendant: two life insurance policies issued by Ace American Insurance Company ("Ace") that became effective in 2009, one life insurance policy issued by Metropolitan Life Insurance Company ("MetLife") that became effective on January 1, 2014, and one disability policy issued by Liberty Mutual that became effective on January 1, 2014.  Plaintiff's president and Federal Rule of Civil Procedure ("Rule") 30(b)(6) representative, Anthony Liberatore ("Mr. Liberatore"), testified at a deposition that Plaintiff's yearly combined income from these four insurance policies was between approximately $850,000 and $1 million.

> After each policy was negotiated and accepted, Defendant paid each respective insurance company its insurance premiums.  In turn, the insurance companies made payments to Plaintiff.  Specifically, Ace paid Plaintiff base commissions though it had no written agreement with Plaintiff; MetLife paid Plaintiff base commissions consistent with a Non-Standard Commissions Agreement and supplemental compensation pursuant to a Supplemental Compensation Brochure; and Liberty Mutual paid Plaintiff base commissions and supplemental compensation without a written agreement and annual service fees pursuant to a two-page Service Fee Disclosure Agreement signed by Liberty Mutual, Plaintiff, and Defendant.  The two-page Service Fee Disclosure Agreement provided, in part, for an annual fee of $125,000 paid by Liberty Mutual to Plaintiff, and it explicitly provided that Defendant would not be held liable for the payment of any fees.  Outside of this two-page Service Fee Disclosure Agreement, the parties have not identified any writing signed by both Plaintiff and Defendant.

On July 1, 2015, Defendant terminated Plaintiff as broker of record, and the four insurance companies stopped making payments to Plaintiff.  Defendant hired Mercer Health & Benefits, LLC, a Marsh and McLennan Company ("Mercer"), as its new broker of record "net of commissions," meaning Mercer did not receive broker commissions.  Mercer, however, received supplemental compensation from each insurance company.  On January 1, 2019, Defendant terminated one of the Ace life insurance policies and transferred it to MetLife.  The other three insurance policies remain in effect.

In his deposition, Mr. Liberatore acknowledged that Defendant had the right to change broker of record whenever it wanted and that Plaintiff would not be paid if it was no longer broker of record.  The MetLife Non-Standard Commissions Agreement mirrors that acknowledgement—noting that the payment of commissions was conditional on Plaintiff acting as broker of record.  According to Mr. Liberatore, Defendant never promised to pay Plaintiff any type of payment, and Plaintiff has never been paid by any insured but rather has only been paid by the insurance company.  Mr. Liberatore further testified that Defendant told him multiple times that Plaintiff would remain the broker of record as long as the policies were the best and Plaintiff's services continued to meet Defendant's needs.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56.  Specifically, Rule 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* at 56(a).  A fact is "material" if proof of its existence or nonexistence may affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Under Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.  After

the movant has met its initial burden, summary judgment is appropriate if the nonmoving party

fails to rebut the moving party's claim by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue

of material fact or by "showing that the materials cited do not establish the absence or presence of

a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely

on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v.*

*DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings, *Celotex*,

477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and "designate

'specific facts showing that there is a genuine issue for trial.'" *Id.* (citations omitted).

    In deciding cross-motions for summary judgment, courts apply the same standards as those

applied when only one party has filed a summary judgment motion. *Cincinnati Ins. Co. v. Devon*

*Intern., Inc.*, 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions

for summary judgment, the 'court must rule on each party's motion on an individual and separate

basis, determining, for each side, whether a judgment may be entered in accordance with the Rule

56 standard.'" *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (quotations

and citations omitted).

    Generally, "where the facts are in dispute, the question of whether a contract was formed

is for the jury to decide." *Quandry Sols. Inc. v. Verifone Inc.*, 2009 WL 997041, at *5 (E.D. Pa.

Apr. 13, 2009) (quoting *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 482 (1984)). "However,

'[t]he question of whether an undisputed set of facts establishes a contract is a matter of

law.'" *Id.* (quoting *Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001)); *see also Legendary Art, LLC v. Godard*, 888 F. Supp. 2d 577, 585 (E.D. Pa. 2012) (citing *Szymanski v. Sacchetta*, 2012 WL 246249, at *4 (E.D. Pa. Jan 26, 2012)). As noted, while most of the facts that are material to the parties' cross-motions are undisputed, where disputed, this Court has construed the facts in favor of Plaintiff.

## DISCUSSION

Here, Defendant moves for summary judgment on all claims—breach of contract, unjust enrichment, promissory estoppel, and tortious interference—on various grounds, including that no contract existed between Plaintiff and Defendant; that Plaintiff's claims are contrary to Pennsylvania insurance law; and that Plaintiff has failed to point to any facts or law requiring Defendant, upon the termination of Plaintiff as broker of record, to either terminate the Plaintiff-negotiated insurance policies or assume liability for the payments the insurance companies were no longer making to Plaintiff. In response, Plaintiff argues that a contract between the parties exists and that precedent supports its claims for relief.

This Court will address the parties' cross-motions jointly as they relate to the breach of contract claim and then address the remaining arguments in Defendant's motion.

### I. *Breach of Contract*

To prevail on a claim of breach of contract, there must be proof of: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Generally, for a valid contract to exist, there must be an offer, an acceptance, and consideration. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991). The

parties to the agreement must manifest an intent to be bound by the terms of the agreement, which must be sufficiently definite to be enforced. *Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986) (citing *Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956)). "For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). That is, the parties must reach a "meeting of the minds" as to the essential terms, such as the price and contract duration. *See Brisbin v. Superior Valve Co.*, 398 F.3d 279, 293 (3d Cir. 2005) (agreeing with magistrate judge that no contract was formed because there was no agreement on essential terms); *Refuse Mgmt. Sys., Inc. v. Consol. Recycling & Transfer Sys., Inc.*, 671 A.2d 1140, 1146 (Pa. Super. Ct. 1996).

Contracts may be express and formed through oral statements or writings, or they may be implied-in-fact and formed based on behavior and circumstances. "[A] contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (quoting *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

As noted, a central issue in the cross-motions for summary judgment is whether a contract—either written, oral, or implied-in-fact—exists that obligates Defendant to pay Plaintiff the alleged loss of income incurred after Defendant terminated Plaintiff's position as the broker of record.

### A. Written Contract

Based on the undisputed facts, including Mr. Liberatore's deposition testimony, there is no question that Plaintiff was Defendant's broker of record for many years. During those years, Plaintiff, as the broker of record, obtained various insurance policies for Defendant to provide its employees benefits. Defendant paid the premiums directly to the insurance companies, and these insurance companies directly paid Plaintiff commissions, compensation, and fees. Plaintiff admits that no written contract existed between Plaintiff and Defendant obligating Defendant to pay Plaintiff commissions, compensation, or fees on the various insurance policies. Plaintiff also admits that Defendant had the right to terminate Plaintiff as the broker of record at any time. (Dep. of Anthony Liberatore, ECF 34-5, at p. 105).

Based on these operative and undisputed facts, this Court finds that no written contract existed between the parties obligating Defendant to compensate Plaintiff for its alleged loss of income following its termination as broker of record.

### B. Oral Contract or Implied-in-Fact Contract

Plaintiff argues that an oral contract or an implied-in-fact contract existed between the parties that required Defendant, upon termination of Plaintiff as broker of record, to either terminate the Plaintiff-negotiated insurance policies or pay Plaintiff for the alleged lost income derived from the insurance companies. Plaintiff's overarching contention is that "inherent in insurance law is the legal axiom that a broker's commissions are earned when the brokered policy is accepted and entered into by the insured for *as long as the policy remains in effect*," meaning as long as "the insured continues to pay premiums and has not cancelled the policy." (Pl.'s Mot. for Partial Summ. J., ECF 35, at p. 8) (emphasis added). As explained below, based on the facts and the law, Plaintiff's contention is unsupported.

7

The distinction between express and implied contracts lies "in the mode of manifesting assent." Restatement (Second) of Contracts § 4 (Am. Law Inst. 1981). "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Elias v. Elias*, 428 Pa. 159, 161 (Pa. 1968). The elements necessary to form a contract implied-in-fact are identical to those necessary to form an express contract. *Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1227 (3d Cir. 1987).

Plaintiff's claim for breach of an implied-in-fact or oral contract fails for the same reasons its breach of contract fails—there is no evidence that any contract giving rise to any payment obligation existed between Plaintiff and Defendant. As noted, Plaintiff admits that it never charged Defendant for any payment related to the insurance policies negotiated on behalf of Defendant and, further, that Defendant never promised to pay Plaintiff any such payment. Plaintiff's income was paid directly by the various insurance companies when Plaintiff was the broker of record, and such payments continued to be made by those insurance companies for as long as Plaintiff remained the broker of record.

To be clear, Plaintiff does not argue that it did not receive income from when the policies were brokered until the time it ceased being the broker of record. Instead, Plaintiff argues that once Defendant changed the broker of record, Plaintiff ceased receiving compensation from the insurance companies, and, therefore, Defendant either had to terminate the policies brokered by Plaintiff or pay Plaintiff the income it had been receiving from the insurance companies. Plaintiff's argument is misguided.

Plaintiff cites to no evidence in the record that establishes that Defendant agreed—either orally, in writing, or by any inference—that in the event Defendant chose to change the broker of

record, Defendant would either terminate the insurance policies or compensate Plaintiff for lost income.  Nor does Plaintiff cite any law that supports such a proposition.  Notably, the case law that Plaintiff cites is distinguishable.  For example, Plaintiff cites to *Schlesinger v. Star Insurance Co. of America*, in which the Superior Court of Pennsylvania held:

> ***An insurer*** who agrees with an agent that the latter shall receive a percentage of money or commissions to be paid upon a contract secured through such agent for the benefit of both cannot, without the agent's expressed consent, dispose of his own right to receive the fund and thereby deprive the agent of his right to compensation as stipulated in the agency contract.  The principal [***insurer***] cannot by such act obtain the full benefit of the agent's labor and so deprive him of all compensation or reward for his service.

100 Pa. Super. 584, 587 (1931) (emphasis added).  The defendant in *Schlesinger* was an insurance company, not an insured, and the defendant therein had entered into a contract with the plaintiff to pay the plaintiff commissions.

Other cases cited by Plaintiff are similarly inapposite.  In *Commonwealth of Pennsylvania, Insurance Department v. Safeguard Mutual Insurance Co.*, the plaintiff was not a broker, the defendant was not an insured, the action was brought by the government to determine whether an insurance company should be closed, and the broker's commission was not indefinite in nature but rather an up-front payment that the broker could waive its right to.  336 A.2d 674, 679, 685 (Pa. Commw. Ct. 1975).  In *Sheppard v. Old Heritage Mutual Insurance Co.*, the plaintiff was not a broker, the defendant was not an insured, and the government brought the action to liquidate the insurance company.  405 A.2d 1325, 1328 (1979).  In *Pennsylvania Association of Life Underwriters v. Foster*, the defendant was not an insured, and the issues in the case related to license revocation, liquidation, and an unauthorized insurer.  645 A.2d 907, 908 (Pa. Commw. Ct. 1994).  Finally, in *Keim v. O'Brien*, the defendant was not an insured, and the proceedings were related to a bankruptcy.  46 F. Supp. 729, 729–30 (E.D. Pa. 1942).

Plaintiff and Defendant both cite to *Loomis Co. v. KEYW Corp.* as instructive.[1]  There, the plaintiff was an insurance broker, and the defendant was an insured that decided to renew an insurance policy with the same insurance company but with another broker, the policy having previously been negotiated by the plaintiff.  2015 WL 2237046, at *1–2 (E.D. Pa. May 13, 2015). The *Loomis* court held that "[a]n insured party is not liable to compensate an insurance broker unless there is an express or implied agreement to pay compensation," and the court found that the "record contain[ed] no evidence that [the insured] had agreed to pay [the broker]."  *Id.* at *3 (citing Couch on Insurance 3d § 46:76).  Likewise, here, Plaintiff has not established any obligation by Defendant to pay Plaintiff's alleged loss of commission, compensation, or fees.  Given that none of the case law Plaintiff cites supports its position and Plaintiff cannot point to any statements or circumstances that support the proposition that Defendant agreed to pay Plaintiff any loss of income in the event Defendant did not terminate the insurance policies when changing brokers, and based on the operative facts of record, this Court finds that no contract—either express or implied-in-fact—exists that requires Defendant to pay Plaintiff its alleged loss of income or terminate the policies.  Because no such contract exists, this Court concludes that no breach of contract occurred.  Accordingly, Defendant's motion for summary judgment on Plaintiff's breach of contract claim is granted, and Plaintiff's partial motion for summary judgment is denied.

## II.   Unjust Enrichment

In support of its claim for unjust enrichment, Plaintiff argues that it conferred the benefit of advantageous insurance policies upon Defendant and argues that Defendant continues to enjoy

---

[1]      *Loomis* discusses a specific provision, § 46:76, from a treatise titled *Couch on Insurance*.  To the extent Plaintiff relies on Couch's § 46:76 generally, outside of what is cited in *Loomis*, such reliance is not supported by the relevant cases cited by Couch in § 46:76 or in the case law of the United States Court of Appeals for the Third Circuit or the Commonwealth of Pennsylvania.

that benefit as well as a reduction of premiums as Plaintiff's expense.  For the reasons stated below, Plaintiff's unjust enrichment claim fails.

"To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must present facts that establish '(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for defendant to retain the benefit without payment to the plaintiff.'"  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (quoting *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)). The most important consideration in the unjust enrichment analysis is whether the enrichment is "unconscionable;" simply benefitting a party does not allow recovery.  *Id.* at 273–74.  A plaintiff must show that the defendant "either wrongfully secured or passively received a benefit that . . . would be unconscionable for [it] to retain."  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008).  An unjust enrichment claim can only survive if the claiming party has a reasonable expectation of being paid by the party benefitted.  *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (affirming dismissal of unjust enrichment claim where plaintiffs "did not have a reasonable expectation of payment" from defendants); *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 441 (E.D. Pa. 2007) (granting summary judgment because plaintiff failed to submit any evidence that it expected payment or that such payment was reasonable).

Here, there is no dispute that Defendant had the right to change its broker of record. Applying the unjust enrichment definition used by Pennsylvania courts, this Court finds that Plaintiff has failed to show that it had a reasonable expectation of being paid by the party benefitted—here, Defendant.  The evidence further negates that expectation, as Defendant never

paid Plaintiff any commission, compensation, or fees.   Additionally, such an outcome would
"disrupt the ability of an insured party to change brokers when it so desires." *Loomis*, 2015 WL
2237046, at *4.   Far from being unconscionable, the ability of an insured to use discounts
negotiated by one broker to further negotiate an insurance policy with another broker is "standard
practice in procurement." *Id.*   Defendant's retention of the benefit provided to it by the Plaintiff-
negotiated insurance policies is not inequitable.   Under these circumstances, Plaintiff's claim for
unjust enrichment fails.   Accordingly, Defendant's motion for summary judgment on this claim is
granted.

### III. Promissory Estoppel

In the complaint, Plaintiff asserts a claim for promissory estoppel.   Under Pennsylvania
law, a plaintiff asserting a promissory estoppel claim bears the burden of proving the following
elements:  (1) the promisor made a promise reasonably expected to induce action or forbearance
by the promisee, (2) the promise induced action or forbearance by the promisee, and (3) injustice
can only be avoided by enforcing the promise. *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x
48, 51 (3d Cir. 2005) (citing *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir.
1990)).   A commitment that is a vague or broad implied promise is not enough; the promise must
be an express one. *C & K Petroleum Prod., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988).

Plaintiff argues that Defendant promised that Plaintiff would remain the broker of record
as long as the policies were the best and Plaintiff's services continued to meet its needs.   Defendant
disputes this contention.   Considering that Defendant was able to negotiate lower premiums under
the new broker of record, it is apparent that Defendant's needs were not being fully met.
Nonetheless, because Plaintiff admits that Defendant never promised to pay Plaintiff any

commissions, compensations, or fees, Defendant's motion for summary judgment on Plaintiff's claim for promissory estoppel is granted.

*IV. Tortious Interference*

Defendant argues that Plaintiff's claim for tortious interference was untimely filed. This Court agrees. Under Pennsylvania law, a claim of tortious interference with contractual relations must be brought within two years of the alleged tortious conduct. 42 Pa. Cons. Stat. § 5524; *CBG Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375 (3d Cir. 2004). Defendant terminated Plaintiff as broker of record effective July 1, 2015. Shortly thereafter, Plaintiff stopped receiving compensation related to the various insurance policies. Plaintiff's complaint, which included the claim of tortious interference with contractual relations, was filed in 2019. Because more than two years passed between Plaintiff's termination and the filing of the complaint, Defendant's motion for summary judgment on this claim is granted.

**CONCLUSION**

For the reasons set forth, this Court finds that Plaintiff cannot maintain its claims for breach of contract, unjust enrichment, promissory estoppel, or tortious interference. Accordingly, Defendant's motion for summary judgment on all of Plaintiff's claims is granted, and Plaintiff's motion for partial summary judgment is denied. Orders consistent with this Memorandum Opinion follow. [2]

*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[2]   Because this Court finds for Defendant on all of Plaintiff's claims for the reasons herein stated, this Court need not address Defendant's arguments based on 40 Pa. Cons. Stat. § 310.72–73, payment and receipt of insurance commissions, or 33 Pa. Cons. Stat. § 3, promise to answer for debt of another.